<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | Crim. No.: 06-911 (KSH) |
| v. | |
| DAVID KIRKLAND, | **OPINION** |
| *Defendant*. | |

**I.     Introduction**

In October 2009, this Court sentenced defendant David Kirkland to 216 months' imprisonment after a jury found him guilty of conspiracy to transport and receive stolen goods in interstate commerce under 18 U.S.C. § 371 and two substantive counts of interstate transportation of stolen goods under 18 U.S.C. §§ 2314 and 2.  Kirkland's conviction and sentence were upheld on appeal.  (D.E. 237-1.)  His projected release date is July 6, 2023.  On April 20, 2021, the Court denied Kirkland's motions for compassionate release, which were based on his medical conditions and the COVID-19 pandemic.  He subsequently filed a letter requesting "an Explanation of Denial for the record," arguing that the Court did not adequately explain what he claimed was a "[c]ategorical [e]xclusion" of his post-conviction conduct.  (D.E. 261.)  He also filed a notice of appeal from the Court's April 20, 2021 ruling.  (D.E. 262.)  Although the timing of these two filings made it unclear whether this Court had jurisdiction to rule on Kirkland's submission on the instant docket, on June 15, 2021, the U.S. Court of Appeals for the Third Circuit stayed Kirkland's appeal pending disposition of the request.  (D.E. 264.)  Accordingly, the Court addresses the substance of Kirkland's letter.

1

**II.     Discussion**

As set forth in the Court's April 20 opinion (D.E. 259), Kirkland, who was at the time incarcerated at the satellite prison camp at FCI Schuylkill,[1] moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on his medical conditions, which he argued placed him at an increased risk of severe effects if he were to contract the COVID-19 virus, and the conditions and protocols at the institution, which he argued were insufficient to protect him from contracting the virus.  He later supplemented his motions with additional information and argument concerning the quarantine protocols and conditions at Schuylkill.  As set forth in the Court's ruling, whether Kirkland was entitled to sentencing relief under § 3582(c)(1)(A) depended on the existence of extraordinary and compelling reasons warranting a reduction in sentence, that he is not a danger to the safety of any other person or to the community under 18 U.S.C. § 3142(g), and that the applicable sentencing factors under 18 U.S.C. § 3553(a) would warrant the requested reduced sentence.  (*See* D.E. 259, at 3-6, 9-11.)

With respect to the "extraordinary and compelling reasons" component, Kirkland cited several medical conditions.  In denying his motions, the Court concluded that given the conditions at Schuylkill, the protocols in place there, and the fact that he had been fully vaccinated with the Pfizer-BioNTech Covid-19 vaccine, those medical conditions did not rise to the level of an extraordinary and compelling reason to grant the relief he sought.

The Court further concluded that even if Kirkland had shown an extraordinary and compelling reason, evaluation of the applicable sentencing factors under 18 U.S.C. § 3553(a) and the required analysis under 18 U.S.C. § 3142(g) did not support a reduction in sentence.  The Court

---

[1] According to BOP records, Kirkland is currently incarcerated at FCI Fort Dix.  BOP, Inmate Locator, BOP Register No. 38437-054, https://www.bop.gov/inmateloc/ (last visited July 26, 2021).  Kirkland has also filed an address change letter stating that he has been transferred to the satellite camp at Fort Dix.  (D.E. 265.)

recognized that § 3553(a) requires a sentence to be "sufficient, but not greater than necessary" to serve the purposes of sentencing enumerated in § 3553(a)(2), and that among the other statutory considerations in § 3553(a) are the nature and circumstances of the offense and the defendant's history and characteristics. (D.E. 259, at 10.) The Court noted the nature of Kirkland's long-running scheme, his many victims, his crimes' devastating effects on them, his planning of the offense while federally incarcerated for an earlier, highly similar crime, and his continued insistence despite all this that his conduct was non-violent. (*Id.* at 10-11.) In determining that relief was not warranted, the Court acknowledged that Kirkland appeared to have made some efforts towards rehabilitation, which included taking numerous courses during his incarceration. (*Id.* at 10.)

In Kirkland's most recent submission, which the Court construes as a motion for reconsideration, he argues that the Court "failed to state . . . an adequate rationale for its Categorical Exclusion of [his] 'post-conviction conduct'" and seeks "an [e]xplanation of [d]enial for the record." (D.E. 261, at 1.) In substance, he disagrees with the Court's analysis of the § 3553(a) factors and contends that the Court should have weighed his proffered evidence of post-conviction and post-sentence rehabilitative efforts more heavily, citing *Pepper v. United States*, 562 U.S. 476 (2011), and *United States v. Easter*, 975 F.3d 318 (3d Cir. 2020).

Relevant here, reconsideration is only warranted to "correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *accord United States v. Mayfield*, 2020 WL 3604090, at *2 (D.N.J. July 2, 2020) (Bumb, J.) (applying standard in compassionate release context).[2] It is an "extraordinary

---

[2] A motion for reconsideration may also be based on an intervening change in controlling law or the availability of new evidence not available when the court issued the original decision. *Quinteros*, 176 F.3d at 677. There is no argument that either of these grounds exists.

3

remedy," one granted only where the Court has "overlooked a factual or legal issue that may alter the disposition of the matter." *Mayfield*, 2020 WL 3604090, at *2.

Reconsideration is not merited here. *Pepper* and *Easter* do show that courts may consider post-sentencing developments in the resentencing context. *Pepper*, which Kirkland's counsel cited in the original round of briefing (D.E. 246, at 15-16), held that on resentencing after a defendant's original sentence was set aside on appeal, a district court may consider evidence of post-sentencing rehabilitation, recognizing that such evidence "may be highly relevant to several of the § 3553(a) factors." 562 U.S. at 481, 491. Similarly, *Easter* held that in deciding whether to reduce a defendant's sentence under the First Step Act and 18 U.S.C. § 3582(c)(1)(B), a district court must consider anew "all of the § 3553(a) factors to the extent they are applicable," which may involve evaluation of "post-sentencing developments, such as . . . rehabilitation arguments." 975 F.3d at 326-27.

But neither case states that a court *must* grant a reduction in sentence simply because a defendant has proffered evidence of rehabilitative efforts. *See Pepper*, 562 U.S. at 505 n.17 ("Of course, we do not mean to imply that a district court must reduce a defendant's sentence upon any showing of postsentencing rehabilitation."). Instead, that evidence is to be *part of* this Court's consideration of the § 3553(a) factors, to the extent those factors are applicable. Indeed, *Easter* itself makes clear what the Third Circuit expects district courts to do: give "'meaningful consideration'" to the "'particular circumstances of the case . . . within the parameters of § 3553(a)'" and ensure that where "§ 3553(a) arguments were raised," the court addresses them in "'more than a rote recitation of the § 3553(a) factors.'" *Easter*, 975 F.3d at 326-27 (quoting *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009)). In ruling here, the Court acknowledged that Kirkland had based his request for a sentence reduction, in part, on his post-sentencing conduct, including a clean disciplinary record since 2008 and his record of taking courses while

4

incarcerated. (*See* D.E. 259, at 2, 10.)[3] Set alongside the details of Kirkland's offenses, which he planned while incarcerated for a similar scheme, which victimized many people in ways that profoundly affected their lives, and which he continues to describe in ways that suggest he does not fully acknowledge the gravity of his conduct or its impact on the victims—an issue this Court noted at his original sentencing hearing, and one which apparently persists even these many years later—this rehabilitative evidence was insufficient to warrant a sentence less than the 216-month term he is serving. The Court's ruling tethered its observations to the applicable sentencing factors, including the nature and circumstances of the offense, Kirkland's history and characteristics (including the connection between his prior and current federal sentences, and that he used the former to plan the offense resulting in the latter), the need for just punishment, and the need to protect the public from further crimes by Kirkland. In other words, consistent with *Easter*, the Court "consider[ed] anew" the applicable § 3553(a) factors in the particular circumstances of this case, including the arguments of the parties as to those factors,[4] and in more than a "rote recitation" of the factors, explained why a lesser sentence is not appropriate here. The Court did not, as Kirkland contends, "categorically exclude" his proffered evidence; that evidence simply did not warrant the relief he sought.

Kirkland also takes issue with the Court's conclusion that release (which would be the result of the requested reduction in sentence to time served) would not be appropriate under 18

---

[3] As the government pointed out in opposing relief, at least a portion of the courses took place during Kirkland's prior federal incarceration – during which he planned the crimes for which he is serving his current sentence. (*See* D.E. 248, at 9.)

[4] The information Kirkland now cites, including his role at a prior institution as a suicide watch companion, a clean disciplinary history since 2008, "two lesser security transfers," participation in the inmate financial responsibility program, "no drug or alcohol addition," his age, and his then-current placement at a minimum security prison camp (D.E. 261, at 1-2), was, with the exception of good time credit, all raised previously, either through counsel or in one or more of Kirkland's *pro se* submissions. (*See* D.E. 246, 249, 253.) The accrual of good time credits is simply a manifestation of the disciplinary record Kirkland cited.

U.S.C. § 3142(g). He suggests that this conclusion is "factually unsound" because the Court's opinion does not acknowledge that he committed his offenses long ago.[5] That is, however, the natural consequence of the lengthy sentence that the Court imposed, and which the Court continues to find appropriate under the current circumstances, including with the benefit of the post-sentencing evidence Kirkland has cited. As noted earlier, the full scope and severity of Kirkland's conduct still seems to escape him. *Cf.* 18 U.S.C. § 3142(g)(4) (directing court to consider "nature and seriousness of the danger to any person or to the community that would be posed by the person's release"). To the extent Kirkland contends that his indictment did not charge him with victimizing "hundreds," his sentence, which was upheld on appeal, included a four-level upward adjustment to the base offense level for the number of victims, and this issue, and specifically the number of victims, was argued at length at sentencing, with the Court concluding that the number that would be used for sentencing purposes was 201. (*See* D.E. 193, Sent'g Tr. 77:2-80:6; PSR ¶¶ 134, 152.) Succinctly, Kirkland has shown no basis for reconsideration of the Court's exercise of its discretion to conclude that a reduction in sentence is unwarranted.

**III.   Conclusion**

For the reasons set forth above, Kirkland's motion is denied. An appropriate order will issue.

Dated: July 26, 2021                    /s/ Katharine S. Hayden
                                        Katharine S. Hayden, U.S.D.J.

---

[5] While Kirkland argues that the judgment states that his offense took place in 1999, it actually states the conspiracy charged in count 1 ran from March 1999 through November 2006. (D.E. 189.)